The statute of usury declares that all notes, bonds, c., whereupon or whereby there shall be reserved or taken any greater sum or greater value for the loan or forbearance of money than at the rate of seven per cent, shall be void. That is, if by the contract of the parties the borrower shall be compelled to pay, if he performs his contract, *Page 143 
and the lender will receive, the amount of his principal loaned and more than seven per cent interest, or if the lender will receive his principal and legal rate of interest, and will have the right, at his option, to receive an additional pecuniary benefit, the contract shall be void. There must be a certainty, at the time of making the contract, that a greater sum or value than seven per cent is received, taken or reserved by the lender. In this case, there is nothing on the face of the contract showing a reservation of more than the legal rate of interest, unless it is that the note was payable in the city of New York; and this, it is contended, constitutes the usury. It is urged that the difference in exchange, between distant places within the State, is a matter of real and substantial value, and that the courts of this State have repeatedly decided it so to be. The cases cited in support of this proposition decide that charges for a difference of exchange between different places is lawful, and that a deduction of such difference between country and city funds, in addition to the usual discount, is not usury. (7Paige, 581; 10 Wend., 117; 10 Paige, 109; Cayuga CountyBank v. Hunt, 2 Hill, 635.) The deductions in these cases, however, were uniformly of the amount or value of the (then) present rate of exchange, and not of any future contingent and uncertain value.
In the present case there was no deduction of any rate of exchange, but the note was discounted at the usual rate of interest taken in advance, and which was deemed to be lawful in the case of Marvine v. Hymers (2 Kern., 230). It is true the defendants resided at Buffalo at the time of the discount, and that the note was made payable in New York, not for their particular accommodation; nor does it seem to have been insisted upon by the plaintiff, that it should be so made payable as a condition of its being discounted. It was due seventy-five days after its date; and when discounted, the difference of exchange was one-half of one per cent in favor of the city of New York. But it did not follow, to a legal certainty, that such difference would exist when the note matured; though, "from our knowledge of the course of *Page 144 
trade" (as Judge DENIO remarks, in Marvine v. Hymers, 2Kern., 233), "we may suppose that but little doubt could be entertained upon that point. Still, no one could legally know that funds would be worth as much then in New York, as when the discount was made." I am disposed to concur in that view, and cannot, therefore, indorse the position, that, "until some extraordinary and unlooked for revolution occurs in the domain of trade and commerce, we may look for the current of money to flow from the country to the great marts, where the merchandise of the world is purchased and distributed, with about the same certainty that we may for the streams to seek the ocean," c. The rate of exchange upon inland bills is not fixed by law, as in the case of foreign bills. It depends upon the changes and fluctuations of trade. Though probable, it is not absolutely certain, that the difference in favor of New York would continue to be, as it then was, at one-half per cent. If, as in the case of The SenecaCounty Bank v. Schermerhorn (1 Denio, 133), where $22.50 was paid and taken in sight drafts, when the rate of exchange was in favor of New York to that amount, the contract would undoubtedly have been usurious. It is of no consequence to say, that making the note payable in New York imposed upon the defendants the additional burden and expense of transmitting funds there to meet the note at maturity. The place of payment is always as much a matter of agreement and regulation between the parties as the time. It is frequently a matter of accommodation to the maker to pay at a distant place. But suppose, in this case, it was not for the accommodation of the defendants and they did not pay at maturity, what amount could have been recovered, or what amount is actually to be recovered, if the judgment is affirmed? Simply the face of the note and interest; and a tender of that sum before suit brought would have extinguished the note. Its payment could have been enforced in New York, as well as in Buffalo — that is, if property could have been found in either place upon which to levy an execution — no matter at which place it had been payable. But no more could have been recovered than the amount secured by *Page 145 
the face of the note. A dollar was worth no more in one place than another. The difference of exchange could not have been recovered, because such payment was not due by the contract. If the bank had been credited in New York with the avails of the note, it would have been funds there to its use; but if not paid, the note would be, as it was, returned. The difference of exchange, if it still existed, would have been charged back upon them. It had no absolute control or option in the matter. I am not prepared to say, nor is it necessary in this case, that if the note had, upon its face, reserved the seven per cent, and had contained an agreement to pay the difference of exchange, whatever it might be, and the additional fact had been averred and proved, that it was a further condition of the loan, that the defendants should receive the proceeds in drafts on New York, charging a premium of exchange, that the transaction would not have been usurious: but this case presents no such aspects. It is the very common one, of discount of a note by a country bank, payable in New York, on time, at the usual rate of discount or interest, with the chance that the difference of exchange may be in favor of the place where the note is payable at its maturity.
I think the decision of this court in Marvine v. Hymers,
already cited, disposes of this case, and that it is unnecessary to pursue the inquiry further.
It was urged, that the question of usury was one of intent, to be derived from the facts, and that this was a question for the jury. It does not appear, upon the bill of exceptions, that the defendants insisted upon going to the jury upon the question of intent, nor that they specifically excepted to any decision of the court excluding them from the jury on that ground.
But conceding the point to be well presented by the bill, there was no question of fact on which an intent or device to avoid the statute could be inferred. Before the question of intent is arrived at, to be submitted to the jury, a contract must be proved from which it may be inferred. It has been shown that there was nothing upon the face of the note securing *Page 146 
a greater rate of interest than seven per cent, nor were there collateral facts outside, as in Merrills v. Law (9 Cow.,
65); Austin v. Fuller (12 Barb., 360). To constitute usury in this case, we are to assume that the rate of discount would be in favor of New York at the time the note became due; which, in our judgment, we cannot do.
It was argued, that if the plaintiff was permitted to recover in this case, every country bank might, and probably would, require all notes presented to them for discount to be payable in the city of New York, or wherever the rate of exchange would seem to favor the lender. We are not here to decide upon probabilities, or to speculate upon views which may be taken of future supposed cases. We take the present one as we find it, and discuss the question, and that only, which the facts present us. If the law is not broad enough in its provisions to correct all the evils which may be imagined to exist, the remedy is with the Legislature, and not with the courts.
SELDEN and GRAY, Js., dissented; all the other judges concurring,
Judgment affirmed.